UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHIGAN DEPARTMENT OF
TRANSPORTATION, et al.,

      Plaintiffs,

v.                                          Case No. 2:08-cv-286
                                               HON. GORDON J. QUIST

ALLSTATE PAINTING AND
CONTRACTING CO., et al.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

In May of 2002, the Michigan Department of Transportation (MDOT) and Allstate Painting and Contracting Co. (Allstate) entered into a contract requiring Allstate to clean, coat and paint 46 bays running under the Mackinac Bridge. American Motorists Insurance Company (AMICO), as surety, and Allstate, as principal, executed performance bonds which called for AMICO to pay the MDOT up to $8,217,000 and $2,054,250 in the event that the principal, Allstate, did not fully perform the contract. In November of 2008, unsatisfied with the performance by Allstate, the MDOT and the Mackinac Bridge Authority (MBA) filed suit in state circuit court seeking damages. The complaint named Allstate and AMICO as defendants. The complaint alleged state law claims based on breach of contract, breach of warranty, and liability of the surety under the performance bond. On November 24, 2008, AMICO timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, alleging diversity jurisdiction under 28 U.S.C. § 1332. On December 22, 2008, plaintiffs filed a motion to remand, asserting that removal was improper because Allstate did not consent to the removal action and neither the MBA nor the MDOT are citizens of

any state for purposes of diversity jurisdiction. The matter has been fully briefed, and oral argument was held on February 3, 2009.

The MDOT and the MBA first argue that removal was improper in this case because all defendants had not concurred in the removal. According to plaintiffs, the Sixth Circuit has imposed a rule of unanimity, requiring that all defendants who have been served must either join in removal or file a written consent to the removal. Two defendants were named in this action, Allstate and AMICO and, according to plaintiffs, both have been served with summons, complaint and exhibits. Allstate was served with process when process was sent to a registered agent in November of 2008. Allstate did not consent to the removal of this action and, therefore, plaintiffs maintain that removal was improper. AMICO does not dispute that Allstate did not consent to the removal of this action. However, AMICO maintains that Allstate's consent was not possible in this action and that the failure to get Allstate's consent does not bar removal in this case. According to AMICO, the rule of unanimity has exceptions, including where the nonjoining defendant is merely a nominal or formal party. *See Klein v. Manor Healthcare Corp.*, 1994 U.S. App. LEXIS 6086, *12, n.8 (6th Cir. March 22, 1994). AMICO maintains that Allstate is a nominal party because it is an inactive corporation which is no longer authorized to conduct business. The materials provided to this Court establish that Allstate is a defunct corporation whose domestic registration was cancelled by the Ohio Secretary of State on April 16, 2008. Ohio law prohibits Allstate from conducting business after its articles have been cancelled and, thus, cannot conduct business in the State of Michigan. Furthermore, Allstate's Michigan registration was revoked via automatic withdrawal in July of 2008, which terminated its authority to conduct any business in Michigan. AMICO's attempts to correspond with Allstate have all been returned and, while Allstate's resident agent in Michigan was served, Allstate in Ohio has not been served and has never filed an appearance in this action. Under

the circumstances presented, the undersigned concludes that Allstate was a nominal party not capable of concurring in the removal of this action. Accordingly, the failure of Allstate to concur in the removal does not justify remand of this case.

Plaintiffs next argue that there is not complete diversity jurisdiction under 28 U.S.C. § 1332 and, therefore, the matter should be remanded. According to plaintiffs, the MDOT and the MBA are not "citizens" of any state for purposes of diversity jurisdiction because they are the "arm or alter ego of the State." In *University of Tennessee v. U.S. Fidelity & Guarantee Company*, 670 F.Supp. 1379 (E.D. Tenn.), the court explained:

> It is well settled that a State is not a "citizen" for purposes of diversity jurisdiction under 28 U.S.C. § 332. *See, e.g., Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973); *Postal Telegraph Cable Company v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). It is equally well settled that "a political subdivision of a State, unless it is simply the arm or *alter ego* of the State" is a citizen of the State for diversity purposes. *Moor,* 411 U.S. at 717, 93 S.Ct. at 1800. Moreover, the question whether a particular entity is an arm or *alter ego* of the State for purposes of diversity jurisdiction is purely a question of federal law. *See Hughes-Bechtol, Inc. v. W. Virginia Bd. of Regents,* 527 F.Supp. 1366 (S.D. Ohio 1981), *aff'd,* 737 F.2d 540, 543 (6th Cir.1984), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Long v. Richardson,* 525 F.2d 74, 79 (6th Cir.1975).

*Id.* at 1380.

According to defendants, the MDOT and the MBA are citizens of the State of Michigan and there is, therefore, complete diversity. In *Southwest Louisiana Convention & Visitors Bureau v. Employers Mutual Casualty Company*, 2007 WL 2228368 (W.D. La. June 25, 2007), the court explained:

> Defendant contends that this court has original diversity jurisdiction under 28 U.S.C. § 1332. This requires that the parties be "citizens of different States." "[A] State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda,* 93 S.Ct. 1785,

> 1800 (1973). However, "a political subdivision of a State, unless it is simply 'the arm or *alter ego* of the State,' is a citizen of the State for diversity purposes." *Id.* . . .
>
> The analysis of whether a political body is a citizen for purposes of diversity jurisdiction is the same as the analysis used to determine if a political body enjoys 11th Amendment immunity. *Tradigrain v. Mississippi State Port Authority,* 701 F.2d 1131, 1132 (5th Cir.1983). The ultimate question is whether the "state is the real party in interest" in the lawsuit nominally brought in the name of the political entity. *Id.* at 1133. In answering this question the court should look to the state's constitutional, statutory and decisional law and consider:
>
> 1. the treatment of entity by the state statutes and state courts;
>
> 2. the source of the entity's funding;
>
> 3. the extent of the entity's local autonomy;
>
> 4. whether the entity is concerned primarily with local, as opposed to statewide, problems;
>
> 5. whether the entity has the express authority to sue and be sued in its own name;
>
> 6. whether the entity has the right to hold and use property;
>
> *PYCA Industries v. Harrison County Waste Mngmt.,* 81 F.3d 1412, 1416 (5th Cir.1996).

*Id.* at 1.

Most courts that have looked at this question have concluded that the analysis to determine whether or not a state agency is a citizen of the state is similar to the analysis utilized in determining whether or not that agency is entitled to Eleventh Amendment immunity. In *Befitel v. Global Horizons, Inc.*, 461 F.Supp.2d 1218 (D. Ha. 2006), the court explained:

> However, the Ninth Circuit has recognized that "a similar rule controls the determination of diversity jurisdiction when individual state officers or agencies are named in lieu of the state" as the

> Eleventh Amendment analysis. *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir.1981). The weight of authority from other circuits supports this similarity. *Maryland Stadium Authority v. Ellerbe Becket Inc.,* 407 F.3d 255, 260-61 (4th Cir.2005) (adopting the same four factor Eleventh Amendment immunity analysis for diversity jurisdiction analysis); *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 412 (11th Cir.1999) (holding that although the "question of diversity jurisdiction is distinct from that of immunity," the analysis of citizenship determinations for Eleventh Amendment immunity and diversity jurisdiction are the same); *Tradigrain, Inc. v. Mississippi State Port Authority,* 701 F.2d 1131, 1132 (5th Cir.1983) (concluding that the Eleventh Amendment immunity and diversity jurisdiction analyses are "virtually identical"); *University of Rhode Island v. A.W. Chesterton Co.,* 2 F.3d 1200, 1202-03 n. 4 (1st Cir.1993) (rejecting two proposed distinctions between the Eleventh Amendment and diversity considerations).

*Id*. at 1221.

The courts that have faced the question of whether or not the MDOT is an agency of the State of Michigan, and entitled to Eleventh Amendment immunity, have answered that question in the affirmative. *See O'Hara v. Norfolk Southern Railway Company*, 2006 WL 435723 (E.D. Mich. 2006), which explained that "it is undisputed that MDOT is an agency of the State of Michigan" and further held that the MDOT was entitled to Eleventh Amendment immunity. In *Michigan Road Builders Association v. Blanchard*, 761 F.Supp. 1303 (W.D. Mich. 1991), the court held that the MDOT was an entity of the State of Michigan and was entitled to Eleventh Amendment immunity.

The MDOT clearly appears to be an arm or alter ego of the State of Michigan. The MDOT is concerned with transportation on a state-wide basis, its funding comes from the State of Michigan, and has been consistently held to be entitled to Eleventh Amendment immunity. There is a better argument that the MBA may not be an arm or alter ego of the State of Michigan because

the statute created it as a public benefit corporation with the authority to sue and be sued. The statute explains:

> The Mackinac bridge authority is created within the department of transportation as a nonsalaried entity, a public benefit corporation, and an agency and instrumentality of the state of Michigan. The Mackinac bridge authority is a body corporate and may by that name sue and be sued, plead and be impleaded, contract and be contracted with, have a corporate seal, and enjoy and carry out all powers granted to it in furtherance of the duty of the state of Michigan to provide and maintain a system of highways and bridges for the use and convenience of its inhabitants. In addition to the powers expressly granted to it under Michigan law, the authority shall have all powers necessary or convenient to carry out the things authorized and to effect the purposes of this act.

MCL § 254.302.

The statute, however, does not abrogate Eleventh Amendment immunity, nor indicate an intent to allow the MBA to be sued in federal court. As the Sixth Circuit explained in *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975):

> Assuming, without deciding, that this action is a suit against the State within the meaning of the eleventh amendment, we believe that Tennessee has waived the immunity by consenting to suits against the University of Tennessee. As noted above, the University's original charter provides that it may "sue and be sued, plead and be impleaded, in any court of law or equity in this State or elsewhere." We are not unmindful that a waiver of a constitutional right must appear clearly and may not be lightly inferred. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347 (1974). For example, it seems generally agreed that a state's consent to be sued in its own courts does not necessarily imply consent to be sued in federal court. See *Williams v. Eaton*, 443 F.2d 422, 428 (10th Cir. 1971); *Scott v. Board of Supervisors of Louisiana State University*, 336 F.2d 557, 558 (5th Cir. 1964). We are also aware that when a "public instrumentality is created with the right 'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal courts." *Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 277, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959); see *Ford Motor Co. v. Department*

>*of Treasury*, 323 U.S. 459, 465-66 & n.8, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Board of Regents of the *University of Nebraska v. Dawes*, 370 F.Supp. 1190, 1193 (D.Neb.1974).

*Id*. at 352-353.

The law requires that there be complete diversity for this Court to have subject matter jurisdiction. At oral argument, both attorneys indicated that if either the MDOT or the MBA was found to be an arm or alter ego of the State of Michigan, it would not be a citizen of Michigan and there would not be complete diversity. In the opinion of the undersigned, the MDOT is an arm or alter ego of the State of Michigan and, therefore, diversity jurisdiction is defeated.[1]

Defendants argue that it is inequitable for the plaintiffs in this case to maintain there is not diversity jurisdiction when the MDOT and the MBA have in the past filed suits in federal court maintaining diversity jurisdiction. There is appeal to this argument as it seems unfair that the MDOT and the MBA should be allowed to take different positions in different cases as to whether or not they are citizens of the State of Michigan. However, a party cannot waive an objection to a lack of subject matter jurisdiction. In *South Carolina Department of Disabilities and Special Needs v. Hoover Universal, Incorporated*, 535 F.3d 300 (4th Cir. 2008), the court explained:

>An undoubtedly inequitable hardship results from allowing the plaintiffs to prosecute actions in federal court and, after they lose on motions for summary judgment, granting their motions to vacate the judgments because of a lack of subject matter jurisdiction. As Hoover laments, "Plaintiffs have presented the federal courts with a procedural morass of their own making, and should not be rewarded at this late stage of the proceedings with a 'do over' in state court." In most situations, this argument would be persuasive. But subject matter jurisdiction goes to the very power of the court to act, and regardless of the waste resulting from having completed proceedings

---

[1] The MBA also appears to be entitled to Eleventh Amendment immunity and would, in my opinion, be considered an arm or alter ego of the State of Michigan.

> later vacated by a late-discovered jurisdictional defect, an order or judgment entered by a court without subject matter jurisdiction is a nullity.

*Id.* at 302-303.

Based on the materials presented to this Court, the undersigned concludes that the MDOT is an alter ego of the State of Michigan and, therefore, has no citizenship establishing diversity jurisdiction. Accordingly, it is recommended that plaintiffs' motion to remand (Docket #10) be granted.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
      TIMOTHY P. GREELEY
      UNITED STATES MAGISTRATE JUDGE

Dated: March 11, 2009